Madam Clerk, let's go to the next case. 315-0302 Steak n Shake v. Workers' Compensation Counsel, you may proceed. May it please the Court and Counsel, my name is George Klauke, representing Steak n Shake in this appeal. And this is a case where we believe that the Illinois Workers' Compensation Commission incorrectly decided the issue of whether, well, there's a lot of issues as noted in my brief, I'm just going to go through kind of the biggest one that we have the biggest issue with, and that is the cubital tunnel release. Mr. Paquin had claimed repetitive trauma while working for Steak n Shake. There is a large discrepancy on how the manifestation of injury date took place, and I'm going to kind of skim through that at the moment. Is that the one where he went to the doctor because of the attorney's referral? Right, I don't think the Court is, I mean, you know, the Duran case obviously is the landmark case, and I know you're well aware of that case, especially Houston Stolbridge, but I don't think the Commission or any of the courts all the way up have ever found that the date that a petitioner went to an attorney was the manifestation of injury date. Well, that's not the date he went to the attorney, he went to the doctor as a result of the referral. So you mean if one of your good clients calls you and asks you to refer the client to a doctor, you won't do that? One of my good clients? What's wrong with the attorney referring him to a doctor? I just think it raised a red flag for Dr. Newcomer and also for the employer in this case that if Mr. Paquin was having these issues that he didn't, you know, seek medical attention before he sought legal advice. Yeah, but doesn't it, ironically enough, sort of confirm that the claim, confirm the Commission's decision, because he testified, he contacted the attorney to get a referral to a doctor because of a medical problem. Wasn't that the testimony? I believe that was the testimony or the gist of the testimony. Right. Again, Dr. Newcomer had a big issue with that because, in his mind, you deal with the medical issue if you're having a medical issue. And the interesting thing here, too. I mean, that makes sense, but admittedly, if the claimant calls up the attorney to draw a will and he says, have you got any other problems, oh, by the way, and then he refers him to a doctor, that's a little different. He called him up, he said, because he was having a medical problem. Yeah, I mean, when he claimed that he spoke to somebody at Steak and Shake, and the way I took the timeline was that he was not on, he called in and he said, I can't work because my arm hurts on the following Sunday. And he was then off the schedule. So when he went back to work, he then is off the schedule, and then he goes to the lawyer because he was off the schedule. And that's when, apparently, a conversation took place about what else they might be able to do with him. So I'm not sure of the reason. We don't really know the reason why he went to the lawyer, but in any event. What difference does it make what the reason is that he went? Again, I don't think it really makes a difference. I mean, I wouldn't say, you know, they took me off the schedule, I guess I'm fired, can I sue them? Right, I'm assuming that's the case. Why didn't you get fired? Well, I couldn't work because my arm hurt. Oh, well, you may have a workers' comp case. I don't want to speculate, but I would assume that something like that probably occurred. But the court took the date that he went to the lawyer, I believe, which was October 26th, and used that as the manifestation date. And I just, I've never seen that occur before. I understand why you're raising it, but let me ask you, follow this up with another question. Is a formal medical diagnosis necessary to setting a manifestation date? Well, the answer is no. And the reason is because a reasonable person might, has to look at, understand they have a condition, number one, and number two, understand that it's related to their job. And that was the big issue in the Duran case. Once that occurs, that's the manifestation date. But the courts and the cases have said, well, there could be a few different ones. It could be the last day of work.  Well, that could be the date, like you said, when he called the lawyer, but you're using that as the shield. Well, he thinks he's got a problem, but he made the mistake of calling his lawyer first. Ergo, he loses. Is that what you want us to say? No, but I think it's a factor, and I think it's a factor, especially in regards to this case, because of how the treatment then occurred thereafter. And I want to point out that the arbitrator, which is now the commission decision, states, and this is on page 11 of the commission decision, it's my appendix 29. In finding that Mr. Paquin had a condition of both bilateral carpal tunnel and cubital tunnel, she states, Dr. Hoffman assessed bilateral carpal tunnel and bilateral cubital tunnel, and she's talking about the first treatment, this is paragraph 3, on November 2 of 2010 with Dr. Hoffman. But Dr. Hoffman's records of November 2 of 2010, and this is at C100 in the record, says no such thing. He does diagnose bilateral carpal tunnel syndrome. He does not diagnose, as stated by the arbitrator and thus the commission, bilateral cubital tunnel syndrome. Actually, that's what the arbitrator says. He says Dr. Hoffman assessed both, but then the next sentence the arbitrator says, Petitioner then underwent an EMG and CV that revealed bilateral carpal tunnel, but no evidence of cubital tunnel. Correct, correct. And his records, that's accurate for what his records say, right? No, I believe what she's saying here in her decision is that Dr. Hoffman assessed, because there's no reference whatsoever in the November 2, 2010 record from Dr. Hoffman having anything to do with cubital tunnel. Oh. Okay, so now he does say, I mean, the history by Mr. Paquin says, I am pained by resurrecting up to the L. Okay, that was the history. But Dr. Hoffman didn't, he didn't assess bilateral cubital tunnel, he didn't diagnose it, nothing. Okay. Let's assume you're correct about that. I mean, is that the only issue? I mean, what did Rohde say? Did Rohde's examination indicate that he had cubital tunnel? His exam, he says his examination revealed that clinical findings were such that. Right. And when he finally went to Dr. Rohde on the referral of Dr. Hoffman, according to Dr. Rohde, Mr. Paquin said, I am pained in my wrist, my elbow, and my shoulder, only on the right side. There were no findings, no complaints of problems on the left side, which is interesting to me, because Dr. Hoffman diagnosed bilateral cubital tunnel syndrome. So my point is this, is that by the time he gets to Rohde, he's got only complaints on the right side, no complaints on the left. We have an EMG-NCV that was normal for any problem with the elbows bilaterally. Dr. Rohde then, without doing conservative care like splints or those kinds of things, does surgery on both the wrist and the elbow at the same time. So my point is that there may be an inference, and it may be direct in your mind, that carpal tunnel syndrome was caused by what he claims to be repetitive trauma, and we can get to repetitive trauma in a minute, whether he had proven that or not. But how does the cubital tunnel get thrown in there? Well, Dr. Rohde did not testify or noted that there was parathesis of the ulnar nerve at the left elbow upon examination. Didn't Rohde say that? He said that. Well, I can't think that we should believe him would be the question. Well, because I think that the reason that they awarded the cubital tunnel was because of their belief that that was assessed initially with Dr. Hoffman. And again, you've got an EMG that's negative. So the big issue that I have with Dr. Rohde's opinion is in his deposition where he says, and this is noted in the decision too, where he says on my question, is it possible that he could have gotten better just with the carpal tunnel surgery? And he said yes, that's possible. So how is the cubital tunnel surgery reasonable and necessary under Section 8A if it's possible that Mr. Paquin, only on a carpal tunnel surgery, could have been cured? You're lumping that all in. It's like, if I may give an analogy, you go in for lunch and you order a hamburger and the clerk behind the counter says, can I get you fries and a shake with that? And you say, well, I really don't need it, but okay. Mr. Paquin goes to Dr. Rohde asking for carpal tunnel surgery and Dr. Rohde says, how about also cubital tunnel insurance? Based on his findings, he wrote his findings, that he did have a problem. He didn't just throw it in without any findings at all, did he? Is that what he said? I gratuitously did an operation for no good medical reason? Well, he wouldn't say that because he did the surgery, but I believe that that's what he did because he did it both on the right and the left. And then later he goes and does the left carpal tunnel and the left cubital tunnel all at the same time. And so we're supposed to draw that inference contrary to the commission that that's what he did. That's what you're asking us to do. Dr. Newcomer didn't find any issues with the elbows whatsoever. And they exalted the opinion of obviously the other doctor over Newcomer, over Rohde over Newcomer, right? Well, it's kind of interesting because also in page 11 in my appendix 29, the arbitrator and thus the commission states, however, the arbitrator notes that when Petitioner presented to Dr. Hoffman, he made no mention of complaints regarding his right shoulder. So they eliminated the shoulder because he didn't complain to Dr. Hoffman. But he didn't complain to Dr. Hoffman about his elbows either. And yet they throw that in. Why? Again, if Dr. Rohde can testify in his deposition that it's possible that Mr. Paquin could have recovered and been cured without the cubital tunnel surgery, how do we call that reasonable and necessary treatment under Section 8A of the Act? So you're saying possibilities would control the doctor's decision of whether or not it's necessary because the person could recover. So if you go to the doctor and you've got poison ivy, you don't get any medical treatment because you might recover from that on your own, right? I find it fascinating that Dr. Rohde admits that the cubital, that, you know, and by the way, the surgery that was done, and this is discussed in Dr. Newcomer's deposition, provided a very small incision which Dr. Newcomer did not feel that you could see or transpose the nerve with the incision where it was. So that's another issue. There's a suggestion there that he didn't even do the surgery here. Well, I mean, he made an incision in both elbows, but again, the findings of pathology in the elbows is very sparse, and in my view, based on what Dr. Rohde testified to in his deposition, I don't believe that the commission reasonably found that those surgeries to the cubital tunnel were reasonable and necessary treatment. It would make a difference to you. Yes, it's possible he could recover with just carpal tunnel surgery. Is that correct? That's what Dr. Rohde said. And it's possible he only had carpal tunnel surgery is what you're saying, right? Yeah, right. But if he had said it's possible he could recover, but if there were a follow-up question where Pani said that it's probable that he would not, you would not be making this argument. I think it would be a tougher argument for me, because I think that's one of the things that when you look at reasonableness and necessity of treatment, that's what you're looking at. I mean, the causation issue is still there because of Dr. Newcomer's testimony, because he doesn't feel that he had any issue with the elbow. Well, I mean, whether you agree with the efficacy of it, and I think you're raising some legitimate questions, if the commission chooses to believe Rohde in his opinion as to the necessity of this, his opinion as to the carpal tunnel problem or the cubital tunnel problem with the left elbow, do we say, well, we're going to overlook it and throw it out in reverse because we believe counsel's right? The commission shouldn't have believed Dr. Rohde, and are we not then substituting our judgment for that of the commission on a matter of credibility and medical evidence? Potentially. Yes. And the reason I say potentially, Your Honor, is that the decision is very clear about why they found bilateral cubital tunnel and its relationship to his event, and it's because of his history to Dr. Rohde, Dr. Newcomer, or Dr. Hoffman. That's how they do it. And the problem is they're wrong because he didn't complain about cubital tunnel, and then they say, and we're throwing the shoulder out because the petitioner didn't tell Dr. Hoffman that he had a shoulder issue. So if he didn't tell him he had a shoulder issue and they throw that out, and he didn't tell him he had a cubital tunnel issue, he should throw that out. So they got it wrong. They got this part of their decision wrong, and we would ask that that be reversed. The TTD issue, you know, if the court finds that the carpal tunnel is related to his work, you know, then that's fine except that they doubled it because of the two surgeries. And there were really only, well, they multiplied it by four because of a wrist and an elbow, but the wrist and the elbow were done at the same time, so the TTD was the same period of time for each. The way the arbitrator calculated and the commission adopted calculated it, it should be half of what they did. So they did 23 weeks. It should be 12 or 13 or something. Counsel, you'll have time and reply. Thank you. Thank you. Kelsey may proceed. Can you go to that last question about the Hoffman non-mention? It's not in Hoffman's records, and yet if it's not on the shoulder, if it's not... The very first time that Dr. Hoffman saw Mr. McQueen, he didn't mention the shoulder. He didn't mention the elbow the very first time. If that's what your question is... Well, no, my question was... I'm sorry, I apologize. There's a certain inconsistency, but if you look at the overall records, it's consistent regarding what his problems were, as far as the carpal and the acute and acute and acute and acute and acute tunnel syndrome. He also had a shoulder condition. The arbitrator chose to determine that the shoulder condition was not related to the work activities, but he had all three conditions. If you look at the overall records and the opinions of Dr. Roney, you've got three injuries here. What the allegation was, the shoulder, they found insufficient proof was submitted that the shoulder problems were caused by the work activities. The carpal tunnel, I think, is pretty clear, and in the concept really is an argument that the carpal tunnel wasn't caused by the work activity because even their doctor, Dr. Newcomer, pointed out he used to be a line cook, and that type of job could cause or aggravate a carpal tunnel if you do it long enough. He didn't go into the details how long it was, so he really doesn't have an opinion as such about if you work there long enough. Dr. Roney says the carpal tunnel was related. The issue that I think we're really arguing over is the elbows, both elbows here. And here in this situation we have the opinion of Dr. Roney clearly saying based upon his understanding of the work activities from the injured worker, the elbows were related. Dr. Newcomer, he was, I think, he was being straightforward. He said he, the EMG did not diagnose the cubital tunnel syndrome. He doesn't say that cubital tunnel syndrome cannot be present or found from a physical examination. That wasn't asked. That wasn't touched whatsoever. So you basically just got Dr. Roney's opinion. If he had both opinions, still it's the discretion of the commission which opinions they should find more conclusive. So you're saying Roney found it in his examination and the other doctor didn't address it, right? He did not address the physical findings, correct. He just says the neuroconduction study of the EMG did not show cubital tunnel syndrome. We can see that point. And the commission can believe Roney over that, right? Right. And obviously they did. Right. Except regarding the surgery that he's arguing about on the elbows, it's interesting. The argument is the surgery wasn't reasonable and necessary. But yet Dr. Newcomer doesn't even say that. He says he would not, he says on that point basically it's not the way he would practice orthopedic surgery. Asked directly was it reasonable and necessary to have the surgery on the shoulder, on the elbow? Same answer. So there's not an opinion regarding whether or not it's reasonable and necessary on the elbow surgery. So you're saying really he didn't contradict Roney's opinion. He did not contradict Roney's opinion whatsoever. What do you make of this? He throws out and it hangs in the air the rhetorical question. If Roney believed it was, quote, unquote, possible he could have recovered without the surgery, what is your response to that? Anything's possible. However, in this case the commission found the surgery reasonable, necessary, and related. Factual decisions should not be disturbed. I mean you can ask doctors of back surgery, is it possible the back surgery, the herniated, is it possible he may not need surgery down the road and he can be recovered? Sure, anything's possible. You may discover something down the road. So I don't think there's much of an argument on that point. So if you had to summarize the cubital surgery, whether it was reasonable and necessary, the commission's decision should be supported. Not just simply they found it as a fact. We have to look at whether it's reasonable for them to find that as a fact. What would that, in a summary, be that they found that would lead to their conclusion? They base their conclusion on the opinion of Dr. Roney. Okay. And there's no counter-opinion. So I don't think on that point there's even a... Well, is there a counter-opinion? I thought earlier you argued that there was never an opinion that Newcomer gave. No, no, I said on the surgery for the L, I didn't say. I said Dr. Newcomer did not, said he did not diagnose a, said the neurocognitive study did not show a cubital tunnel. The other point you were mentioning as far as the surgery is concerned. Right. And we don't really have an opinion from Newcomer on that, do we? We don't have an opinion saying it wasn't reasonable and necessary. Right. So I think the decision should be... His statement is that isn't the way I'd practice with the surgery, right? And he said that twice. Okay. And with that, I think it should be upheld. Thank you. Okay. Thank you, counsel. Counsel, you may reply. I don't have a reply if there's any question. I just want to thank you all for your time and consideration of this case, and I'd ask you to reverse the decision of the commission. Thank you. Thank you, counsel. The motion on both three arguments in this matter will be taken under advisement and a written disposition shall issue. Madam Clerk.